We'll hear from counsel in the Barrick case 22-4049. Good morning, may it please the court, Mark Gaylord appearing on behalf of Ballard Spar and the appellant here, Parker-Migliorini International. PMI requests this court to reverse the trial court's denial of PMI's Rule 50B motion, which this court reviews de novo. We alternatively ask the court to request a new trial due to the errors by the trial court at trial. If this case stands, it will allow a plaintiff in an FCA retaliation case to prevail when the plaintiff only informed the employer of regulatory violations. That is not the law in the Tenth Circuit. Sorenson v. Wadsworth, a recent decision out of this court, concluded that merely informing an employer it is not complying with a statutory, regulatory, or contractual requirement, whether through ignorance, by accident, or intent, is not enough to establish nexus to the FCA. The court went on to say, to conclude, that the anti-retaliation provisions of the FCA would be in effect. But what would you require? Sorry? What would you require? What would I require? I require... Yeah, would you have to say, I'm working with the FBI and I'm looking at you over your shoulder? Well, first of all, there was never any evidence that we were informed, Parker-Migliorini was informed that he was working with the FBI. So there was no question, but that they were informed specifically, several times, about what he was looking at and what he was concerned about. What he was concerned about were regulatory violations, were trade regulations. Regulatory violations can lead to criminal convictions, too. This isn't... But the FCA is a civil statute. I understand that. It's not a criminal statute. So what he's talking about is trade regulations. He's talking about, how are we shipping products into another country? Not about... He's talking about cheating the regulations in shipping to another country. Actually, I disagree. If you read Mr. Barrick's testimony, he doesn't talk about cheating. He doesn't talk about making even a false statement to the regulators. He doesn't talk about that at all. He talks about, how are we getting product into another country when it can't go there? There is no evidence in the record that suggests he had a conversation with PMI, that, in fact, they are violating regulatory provisions to do two things, either to avoid the payment of an obligation under the FCA or to stop violation of the FCA. And the FCA is a very distinct statute in contrast to normal, ordinary anti-fraud statutes. Well, didn't he concern, bring his concerns to Johnson? He expressed concerns about... And on at least three different occasions, Johnson confirmed that the practices according to Barrick were illegal. I... No, no. What that is, is that's Mr. Barrick saying... He didn't say that Mr. Johnson confirmed they were illegal. He confirmed... He simply said that we agreed, we surmised that it was illegal. What you have to focus on... So saying he surmises it's illegal is different than saying it's illegal. Well, whether it was illegal or not, an illegal act does not an FCA claim make. So just because you may be making a false statement in a regulatory shipping practice does not in and of itself mean that they are violating the FCA. Helping the FBI investigate a criminal violation of the Foreign Corrupt Practices Act is not informing your employer that he's violating the FCA. Does the USDA have administrative jurisdiction to prosecute criminally? No, I don't believe it does. And wasn't the evidence that when the FBI agent spoke with Mr. Johnson, the USDA agent was present? The USDA was present, but if you read Ms. Agent Bowen's testimony, she has no idea why the USDA agent was there. The USDA agent didn't ask a single question to Mr. Barrick, or Mr. Johnson, and so she had no idea why he was there. Now, what's important is they could have called the USDA agent in this case and asked why he was there and asked what questions were posed, but no such questions were asked. No witness was called. Didn't the FBI agent ask Mr. Johnson about how the product that was ending up in Japan was being sent to Hong Kong, was being sent to Moldova before it was sent to Hong Kong to Japan? There were discussions about whether or not they were smuggling product. There were questions about whether they were bribing government officials in China. So is the answer no? The answer is no. Is that wrong about that? There were no discussions between the FBI agent and Mr. Johnson about why the product that was ultimately being sent to Hong Kong and Japan was being exported to Moldova? Not directly, no. If you read, and that goes to another issue in this case that we asked the court to reverse on the grounds of the admissibility. Well, you were asking for judgment as a matter of law, and that requires no evidence looking the other way. I agree it doesn't require looking at the evidence any other way, but I think if you look carefully at the evidence and you look carefully at the testimony given during the course of this trial, there is absolutely, if you compare it even to the Swenson decision, if you compare it to the facts of the Swenson decision and you take the same statements that were made, I think you need to carefully look at what Mr. Barrick testified to about his conversations with Mr. Johnson, which only dealt with regulatory violations, not with FCA violations. So, but your client doesn't even have to know what the FCA is. He doesn't have to know, but what he has to know. So how could you, I mean, if your client, let's assume your client didn't know, I mean the FCA, and I'm afraid that you could be susceptible to liability, and that's certainly not the case. Well, first of all, what he has to at least do is suggest to us we are submitting documents not just to get a product into another country. So to your point, Judge Brackrack, about Moldova dropping into Hong Kong and getting it to ship to China. That is a discussion they may have had, but the point about Moldova is simply that they may be getting it to Moldova, sending it to Moldova, but what he's not telling you is you're signing an export certificate to avoid the payment of an obligation to the government. What you're not, what he's not telling you is that we are going to, we are filing documents in order to avoid the payment of an inspection. Can't that be inferred though? I mean, that's what you have to do at this stage. You have to draw the inferences in favor of the verdict. And let me just compound his question. To send to Moldova, the USDA charges no inspection fee, correct? To transport to Hong Kong, there is an inspection fee. There's not an inspection fee. To Japan, there is an inspection fee, correct? To Japan, there is an inspection fee if the product is older than 30 months. But the point here is there's no evidence in the record about the standard or the inspection fee. There's no evidence in the record of a conversation that Mr. Johnson had with Mr. Farrick about anything about inspection fees, about false statements to the government, about, all it was about is how are we shipping this product into these countries? And so even though to your point, Judge Carson, to the point that you're asking for us to infer, the inference has to be tied to some relationship, some nexus to the FCA. And I would say it's completely evoked, just like the Swenson case. There, it's a Davis-Bacon Act violation, right? Here, the violation is you're shipping it to Moldova instead of shipping it directly to China. If you ship to China, no inspection fee. If you ship it to Moldova, no inspection fee. So when they talk to us about Moldova, it's not raising an ire in our mind that we're violating some inspection fee. And so as a consequence, there's no evidence in the record to suggest the inference they want to draw. How, I mean, how is it not? The product is in Japan where there is going to be a very substantial inspection fee because of the heavy regulatory requirements. There is no inspection fee in shipping it to Moldova, and the whole point is that Johnson and everybody at PMI knew that the product is going to remain in Moldova for only a short time. Right. First of all, if you look at the record, there's really no evidence in the record about what and how the inspection fee is charged. So all you have is testimony from Mr. Barrett about inspection fees. There's no indication of how those work. Why viewing Mr. Barrett's testimony about the inspection fee in the light most favorable to Mr. Barrett for purposes of Rule 50 motion, what's wrong with that? I mean, it's odd to say that there's no evidence, and the only evidence is that Mr. Barrett testified. Actually, the only evidence that Mr. Barrett testifies to about inspection fees was based upon the court allowing him to do it to see what his understanding was. It's not evidence. The real key is what's his understanding, but it's not evidence that that is the rule. The same thing is about false statements. Throughout their briefing, Barrett argues that there were massive false statements being made by PMI. There's no evidence in the record of that. The only time the word false statement comes up with regards to this case in the trial was during the impeachment of Mr. Parker. And so they go on and say, we presented evidence of false statements that they were seeking to avoid the payment of an obligation. No evidence in the record of that. So as a consequence, the point I focus on is carefully look at what they actually said against the same kind of evaluation in the Sorensen case. Because there, that was on a motion to dismiss, and the court said, you don't have enough here. And even there, I think they disclosed more information to the employer about falsifying records in order to avoid a payment or to secure a payment than they do in this case. And that's what I think the court has to focus on in that issue. I want to ask you a question about the 302 report. And it has to do with the attempt by your opposing counsel to refresh recollection using it. And so originally, it's brought up, and there was an objection made, and the judge says something to the effect, you know, you want to use it to refresh his recollection, tells him how to do it. And the use of the exhibit continues on, frankly, an improper basis. But there aren't continuing objections to the reading of the exhibit in the record. Were your original objections enough to preserve that objection, or by letting the person continue to read it into the record, is that issue out the door? I think it absolutely was enough. I mean, how many times do I have to object to the same inquiry? We made the objection at the front end, and that was enough, and the court sure did not allow it. To do so, as the court knows sometimes, if you do that, you get angry, I think it was enough at first. I'm not unsympathetic with you. I think it was appropriate. And I'll reserve my time. I want to do address, though, the jury instruction. I will simply say this. On the jury instruction, the court has to evaluate the Bostock standard, and the Bostock standard is not the standard. This is the only case in which a judge has applied to the car accident in addition to the underhanding of cost. And I am very concerned. Is it the only case that there have been more than one but-for cause? No, I'm using it in the FCA context, Your Honor. It's the only case in the country where the judge has used the car accident to define the but-for causation, and I think it was improper. It created a multi-motivating factor, and the because of under the FCA is you have to have been terminated because of the notice and retaliatory fact, and I'll reserve my time. Thank you. Thank you. We'll hear from the ability. Thank you. Thank you. Thank you. May it please the court, Katie Panzer on behalf of Plaintiff Apelli, Brandon Beric. This court should affirm the District Court on all issues raised by PMI on this appeal. Mr. Beric presented sufficient evidence at trial to prove the notice element of his claim under the proper notice standard. The 302 report was not offered for the truth of the matter asserted. The Supreme Court's description of but-for causation that was included in the jury instruction was an accurate description, and on the reinstatement issue, PMI failed to meet its burden to show that reinstatement was impossible under this court's decision in Tudor. So do you contend that the jury instruction was proper? I do, yes. The only part of the instruction that PMI has appealed is the inclusion of the car accident example, and in their brief, it argued that the Supreme Court specifically limited Bostock to Title VII cases only. But the court in Bostock said this is traditional, simple, but-for causation. It didn't say, we are now creating a new but-for causation standard just for Title VII cases. And so all it did was explain to the jury that yes, his protected activity has to be the reason he was fired, but in employment cases, often there is more than one but-for cause, and that's where the McDonnell-Douglas burden-shifting pretext analysis comes in the summary judgment to say, yeah, if they hadn't had a reduction in force, they wouldn't have terminated him, but also they wouldn't have terminated him because of his protected activity. So do you agree that you had to prove that even if there wasn't a reduction in force that he would have been terminated? No, the McDonnell-Douglas burden-shifting framework does not apply at trial. It goes away after summary judgment. So is it your position that a combination of the two things, even saying that if there were just a reduction in force, he wouldn't have been terminated, and if there were just this False Claims Act report, he wouldn't have been terminated, that if the two of them combine to make him be terminated, that that's proper? Right, and I think in the employment context where, in the retaliation context, in almost every single case, you're going to see some legitimate non-discriminatory reason for termination. And so, you know, if- No, I understand that they might be able to proffer a non-discriminatory reason or a non-retaliatory reason, but my question is, is do you have to show that he would not have been terminated just for the non-retaliatory reason? So you're saying that he- No, I don't think so. I think, you know, there would be some other non-retaliatory reason, but as to PMI's motion for judgment as a matter of law, the district court correctly denied that motion. The notice standard that PMI is advocating here was not the law in 2021 when we went to trial, and I don't think that its interpretation of Sorensen is what this court intended in Sorensen. PMI is standing here saying, Mr. Barrett has to go tell his boss, I am the relator, I am bringing an FCA claim. And that is just not what the law is or was. What is the evidence that there was- that PMI was on notice of a nexus to what the concerns that Mr. Barrett was articulating did have a nexus to the FCA, that it wasn't just a violation of trade regulations, it was to cheat the USDA out of inspection fees. What specifically is the evidence on that? So PMI is aware of the scope of their wrongful conduct, and PMI has gone to great lengths to try and distinguish, well, that lying to the USDA about where this meat was going was just one small part of this scheme. Really what the FBI was investigating was this overarching scheme. And so, you know, there was the evidence that they made this- they admitted to making a false statement to the USDA in court. Mr. Barrett testified that, you know, PMI would tell the USDA the meat is going to Moldova, but then in fact ship it to Hong Kong, and it never got to Moldova. That was just a complete lie. And so if- why bring Moldova into this situation at all, unless it is to avoid inspection fees? Now, opposing counsel says there was no inspection fee if it had been shipped directly to Hong Kong. Is that correct or incorrect? That's not my understanding. I believe Mr. Barrett testified that Hong Kong required additional inspection fees. And that testimony is in Appendix Volume 13 at pages 3228 to 3231. And then Johnson testified that, you know, this Japanese triangle LSW channel were all standard business practices. And so I think PMI has argued that one false statement before the FBI raid doesn't put us on notice. But it wasn't just that one time. Mr. Johnson testified this was our business practice. We did this all of the time. So they knew that they were making false statements for the purpose of avoiding inspection fees. I think also the fact that the USDA agent was at the interview with Agent Bowen and Mr. Johnson provides notice. Because as the court acknowledged, they don't have criminal jurisdiction. And I- that put Mr. Johnson on notice that- Is there- is there evidence that Johnson knew he was a USDA agent? I am not sure, honestly. In the 302 report, he's identified as a USDA agent. I- I'm not sure. I don't remember if he testified. Yeah. And then also Johnson explained to Agent Bowen that, you know, the meat- how this LSW channel worked with, like, well, we tell the supplier who tells the USDA it's going to Moldova. But then we actually reroute it to Hong Kong and then we smuggle it into China. I also- I want to address Sorenson. Because I think, first of all, this case was published more than a year after trial. So PMI argues that it's controlling. It was not controlling in 2021 when this case went to trial. The controlling case at that time was Reid. But it's controlling now. What was that? It's controlling on notice, right? Right. But I think the issue here is PMI is saying that Barak didn't establish notice. But we have to look at, well, did he establish notice as the jury was instructed on notice? And I don't think that's the case. And they haven't appealed the jury instruction on notice. They didn't propose a jury instruction with the Sorenson notice standard that they're now advocating for. And they didn't object to the instruction given to the jury. So the instruction given to the jury simply stated, this is an abbreviated quote, but Mr. Barak must prove PMI was on notice that he engaged in other efforts to stop one or more violations of the FCA. That's at Appendix Volume 7 at page 1897. It doesn't say PMI has to be aware of the FCA. It doesn't say that they have to be aware they're violating the FCA. It doesn't say that Mr. Barak has to tell them that he's investigating an FCA claim. And so I don't think that this court can reverse on this issue, because the actual issue is the jury instruction. And they didn't appeal that. They didn't preserve that. And there is more than enough evidence, I think, as we put in our brief, to prove notice as it was explained to the jury. Let me ask you a question about the reinstatement. Sure. So, as I'm looking at the district court's order, it's a very summary order regarding reinstatement. It basically just grants the relief with no explanation. No sense that the district court grappled with the considerations for reinstating an employee. How are we supposed to review that without any evidentiary record at the district court that reinstatement was appropriate here? The burden is on the defendant. Agreed, but the district court didn't say anything about whether the defendant had submitted insufficient information. In fact, I mean, the defendant submitted, at least in the context of this issue, the most argument and information of anyone, including the district court and you, and the district court just summarily reinstated. Do you have any authority that says that that's sufficient?  I think the issue here is that PMI put forth this evidence and these arguments in their motion to reconsider. Well, where are they supposed to, I mean, where are they going to put it in before? In the opposition to the motion for reinstatement is, I believe, where it belonged. That was their opportunity to say, no, wait, it is impossible for us to reinstate him and, you know, analyze those factors. They didn't do that. They only brought that up in their motion to reconsider. Shouldn't there have been an evidentiary hearing? I don't believe that there is an entitlement to an evidentiary hearing. And even if there was, they didn't ask for one. Well, they didn't even ask for an evidentiary hearing until after the hearing on the issue of reinstatement. Exactly. Right, if there was an entitlement to an evidentiary hearing, it should have been asked for in their opposition, and it wasn't. Do you remember, in your motion for reinstatement, the position you took? I mean, did you, in your opinion, thoroughly brief the issue and explain how the presumption of reinstatement should be upheld? Or did you just basically throw it out there? There's a presumption of reinstatement. Our guy wants to be reinstated, so reinstate him. I don't recall. Honestly, I do recall that our brief was, or our motion was fairly short. But it is, it's a mandatory remedy. So unless the defendant can prove that it's impossible, not merely difficult or hard or uncomfortable, but impossible. And that burden is on them, and they did not meet it. And I just, with my remaining time, want to touch on the 302 report really quickly. I think to your question earlier, Judge Carson, one objection was not enough. I think that they had an obligation to continue objecting. But regardless... To continue objecting to what? When it was read aloud? Yes, and I think that's an overstatement of what happened. She didn't... I don't think, I don't think it is. I guess I could pull the transcript out and read it to you where the person continues to say, well, it says right here and reads it in several instances. But I think they had an obligation to continue objecting. But regardless, it wasn't admitted under 612. It was admitted under opposing party statement and public record exception. Agent Bowen testified at trial and said, this is my record of my interview with Mr. Johnson, and he said these things to me. So I think that actually erases the second level of hearsay entirely. The opposing party statement exception very clearly applies to Mr. Johnson's statements. But most importantly, it wasn't offered for the truth of the matter asserted. PMI asserted in their brief that it was, offered no explanation. No analysis about how that was. And it was never shown to the jury until closing arguments. It wasn't shown to the jury during Agent Bowen's testimony. What was the argument in closing? How did you use it in closing? It only went to Mr. Johnson's credibility. Ms. Hollingsworth discussed how he is sitting here in trial today saying, well, I don't know anything about the LSW channel. But back in 2012, he told the FBI all about it. So it was only discussed in closing as to his credibility. And PMI has not met their burden. So that sounds like it was used for the truth and not just notice. But I'll think about it. We only have two seconds left. That's a hard question. They didn't meet their burden to show that it had a substantial influence or leaves grave doubt on that matter. And if there's no other questions, we would ask the court to affirm the district court on all issues. Thank you. I'll try to fit everything I want to say in a minute and 40 seconds. First of all, Sorensen isn't the first time this court has said merely informing one of regulatory provisions is not enough. In the McBride case, although that case stands, states, quote, merely informing the employer of regulatory violations without more does not provide sufficient notice because doing so gives the employer no suggestion that the plaintiff is going to report such noncompliance to government officials or key time action. So it's not new law, Your Honor. I think what Sorensen does is merely extend what we did to noncompliance officers. And it requires more than just talking about regulatory violations. Well, don't we have evidence from both Johnson and the plaintiff and the FBI and their discussions, and he was present? I mean, all of that, isn't that just a jury question? I don't think it is, Your Honor. You're asking the judge to make it a credibility finding. I don't think it's a credibility. I think you only have to look at what was said during trial. And what was said during trial was about talking about regulatory violations. It's not that it was improper to infer from that that they were talking about avoiding the payment of an obligation or inspection fees. If you want to look at the 302 report, which you will, to determine whether it should have been admitted or not. Not a single word about inspection fee, not even a single word about making false statements to the USDA. And the problem with what they are trying to- Well, there was all sorts of evidence about false statements. Actually, I disagree with you, Your Honor. Well, you may disagree, but- I do, and because the false statements alone do not create an FCA violation. I may make false statements to the USDA all day long. But if it doesn't result in the avoidance of the payment of an obligation, it doesn't give rise to an FCA claim, and that's the problem with the case. It's clear as a bell in there that they're going to have to pay much higher fees if it came through the legitimate channels. They moved it from A to B in order to avoid that. And I invite you to find a single bit of evidence where they actually demonstrate, in this case, where Barrick actually demonstrated that the statements that PMI made to the USDA resulted in the non-payment of an inspection fee because there isn't a shred of evidence. They could have presented an USDA agent to support it. They could have presented documents to support it. There is not a shred of evidence in this record to support the point you're making. And I, no disrespect, but the fact that- Did you argue that to the jury? Absolutely, we did. And they didn't buy it. But this is a Rule 50B motion, and a Rule 50B motion is you don't look at it before the jury gets it. And the law in sorts and controls. And I could address other issues, but I'll leave them. I think the court has- You're out of time. I'm out of time. You're able to speak to answering his questions. I did. Your Honor, basically, members of the panel, we simply request the court reverse on the Rule 50B motion, and if not, alternatively, set a new trial based on the errors at court. Thank you. Thank you. Very well presented by both sides. We appreciate your excellent advocacy. This matter is submitted.